CHARLES J. DONNELLY, INC. *vs.* DONNELLY BROS., INC. (DONNELLY, INC.) AND THOMAS C. P. DONNELLY. DONNELLY BROS., INC. (DONNELLY, INC.) *et al. vs.* CHARLES J. DONNELLY, INC. *et al.*

MAY 15, 1963.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

PowERS, J.  These are two suits in equity brought by each complainant against the other as the respondent and praying that the respondent in each cause be enjoined and restrained from using the family name in a certain distinctive manner in connection with its business.  They were heard together on bill, answer and proof by a superior court justice who entered a single final decree applicable to both causes granting the prayers of Charles J. Donnelly, Inc., hereinafter called "Charles," and dismissing the bill of complaint brought by Donnelly Bros., Inc., hereinafter called "Thomas."  They are before us on the latter's claim of appeal from said final decree.

It is established by the evidence that in 1934 appellee Charles, his father and three brothers incorporated a clothing and tailoring business under the name of Donnelly Brothers, Inc. which was located at 760 Broad street in Providence. In 1936 Charles surrendered his interest in the family corporation and joined in an agreement whereby he was to retain the premises at 760 Broad street, forego use of the family name except as Charles J. Donnelly and then only in the clothing business, and was to operate his tailoring business as "Swan Cleansing & Tailoring Co." The other members of Donnelly Brothers, Inc. moved their place of business to 40 Broad street, Providence, where they operated under the family name as incorporated in 1934.

The aforesaid agreement was not introduced by either party and there was conflicting testimony as to the period of time Charles was to refrain from using the family name. He thought it might have been for five years, while Thomas thought it to be for a ten-year period. In any event, no serious contention was made that the contract was an issue in the instant proceedings.

Charles' testimony that he first used "Donnelly's" in 1941 in a style designed for him by Dwight Miller, an advertising executive, was corroborated by Mr. Miller who testified that in 1939 he designed the logotype of "Donnelly's" with a sweeping tail to the "y" going back to the letter "D" and with the " 's" separated.

Charles further testified that he continued to use the name as thus distinguished in connection with his advertising from 1941 to the present at his Providence establishment which in 1938 was moved to 790 Broad street. It is uncontradicted that Charles also used the logotype in advertising his Warwick and Cranston establishments, his business having expanded.

William Chapin Cook, a representative of the advertising firm of Horton, Church & Goff, testified that from June

1956 through February 1961 Charles had consistently used the distinctive logotype and had paid the firm $133,239. This corroborated Charles' own testimony as to extensive advertising in the manner alleged.

Thomas testified that he acquired Donnelly Brothers, Inc. in 1944, at which time he hung out a sign displaying "Donnelly Bros. Inc." with an elongated "y," and the "Bros. Inc." blocked inside the sweeping tail. This sign, he testified, remained on the outside of the building until it was demolished just a week before the hearing commenced.

In July 1960 Thomas officially changed the corporate name to "Donnelly, Inc.," and in his advertising used the elongated or sweeping tail on the letter "y." He testified that because his brother Charles and another brother, Vincent, who operated a clothing and tailoring business in Warwick, also used the family name, he caused the name of his corporation to be changed to "Donnelly, Inc." to avoid confusion, although it is uncontradicted that Charles had been advertising as "Donnelly's" for some nineteen years. He denied that he brought about the change in name in an effort to secure business from those who might be led to believe that his company was a part of Charles' operation.

He admitted that in May 1960 he caused to be inserted in the Providence Journal-Bulletin the following: " 'This Is Our Motto': Donnelly Is Here, Donnelly Is There and Donnelly Is Everywhere * * *." The advertisement then solicited business by suggesting that those interested should call either of two listed telephone numbers, which he admitted were separate telephones at the same address.

In at least two instances he misrepresented the extent of his operation in letters to manufacturers, and explained them as extensions he intended to bring about but never did.

The record is replete with exhibits demonstrating that

Charles had advertised extensively and consistently for some twenty years as "Donnelly's," employing a sweeping tail on the "y."

The trial justice found as a fact, inter alia, that the change in the corporate name from "Donnelly Bros., Inc." to "Donnelly, Inc." was designed to confuse the public and thus enable Thomas to trade on Charles' good will. He observed, "Thomas' explanation of the purpose of the change of the corporate name does not inspire confidence in his testimony."

The trial justice made numerous additional findings of fact as to the timing and details of the use of the family name by each complainant, frequently referring to exhibits, and concluded:

"18. That the Court finds that Charles has used the word 'Donnelly's' with the distinctive swept back tail continuously in advertising, on letterheads and on labels.

"19. That the Court finds that the word 'Donnelly's' so written and so used by Charles has acquired a distinctive and secondary meaning in that the public naturally would tend to associate this word with the company that consistently used it. That Charles therefore has the right to use it to the exclusion of others. That he and the public have a right to be protected against any simulation of the name which would tend to divert Charles' customers or to confuse the public."

Pursuant to his findings the trial justice entered a final decree ordering:

"1. That Thomas C. P. Donnelly and Donnelly, Inc., formerly Donnelly Bros., Inc., be and hereby are permanently enjoined, in the trade and/or in dealings with the public, from using the words 'Donnelly, Inc.' and from using the word 'Donnelly' or its possessive form with an underline in any form, whether the underline extends the full length of the word or not and whether it is an extension of the tail of the letter 'Y' or not and whether the letters are in a reverse slant, upright, or in forward slant, or without an underline, unless as

'Donnelly Bros.' or 'Donnelly Bros., Inc.', or the word 'Brothers' instead of the abbreviated 'Bros.'

"2. That the respondents, Thomas C. P. Donnelly and Donnelly, Inc., formerly Donnelly Bros., Inc., be and hereby are permanently enjoined from simulating the name and the advertising of Charles J. Donnelly, Inc., Donnelly's of Warwick, Inc., Donnelly's of Cranston, Inc., and Charles J. Donnelly, and from confusing or misleading the public thereby and from diverting patronage and good will of Charles J. Donnelly, Inc., Donnelly's of Warwick, Inc., Donnelly's of Cranston, Inc., and Charles J. Donnelly, thereby.

"3. That the prayers of Donnelly Bros., Inc., Donnelly, Inc., and Thomas C. P. Donnelly (complainants in Equity No. 28937) [28987] be and hereby are denied and dismissed."

Thomas duly filed an appeal in each cause, assigning as his reasons therefor that the decree is against the law, against the evidence, and against the law, the evidence and the weight thereof.

Since complainant Thomas concedes that by the very nature of his contention, namely, that neither complainant was entitled to relief, and for that reason neither briefed nor argued his appeal in the case of Donnelly Bros., Inc. (Donnelly, Inc.) et al. v. Charles J. Donnelly, Inc. et al., this appeal is denied and dismissed pro forma.

It is the contention of Thomas, now hereafter called respondent, relying on *Harson* v. *Halkyard*, 22 R. I. 102, that since both parties have the surname "Donnelly" neither can be enjoined from the use thereof in connection with his business. The complainant Charles takes no issue with this so far as it goes but, he argues, the authority upon which respondent relies also holds, by implication, that if it can be shown that independent of the name the signs, labels and advertising of respondent are such as to deceive the public into believing that they are dealing with complainant, the rule is otherwise.

In this regard complainant refers our attention to *Cady*

v. *Schultz,* 19 R. I. 193, and to cases from other jurisdictions. This court in *Cady* observed at page 195: "Two persons may bear the same name and each may use it in his business, but not so as to deceive the public and induce customers to mistake one for the other. The use of one's own name is unlawful if exercised fraudulently to attract custom [customers] from another bearer of it."

This court was not therein concerned with conflicting claims as to the use of an identical surname. Rather, the issue there revolved around descriptive terms. The complainant "United States Dental Association" sought to restrain the respondent "U.S. Dental Rooms" from the use of that name as infringing upon the complainant's trademark or trade name established by prior usage. For this reason it might be suggested that the language herein quoted from *Cady* v. *Schultz, supra,* is mere dicta.

The distinction, however, is more apparent than real, since the principle involved is the same. Every man has in common the right to use a descriptive term in the advertising of his services or goods, unless another offering the same services or marketing the same product has, by prior and continuous use thereof, given to a particular descriptive term a secondary meaning which in the public mind identifies the user with the particular services or goods. Such also is the case where, by a distinguishing style and form, one has used his surname in connection with his business and thus has given to said style and form a secondary meaning.

In *Sayles Biltmore Bleacheries Inc.* v. *Narragansett Wiping Supply Co.,* 86 R. I. 99, 106, this court quoted with approval the following from *United Drug Co.* v. *Theodore Rectanus Co.,* 248 U. S. 90, 97: "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a

part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his * * *."

Thus this court in *Harson* v. *Halkyard, supra,* while adhering to the universally accepted rule that every person has the right to the use of his surname in the advertising of his business, also recognized that he may not use it in the distinctive style already used by another in a manner which has given to it a secondary meaning so as to establish it as his exclusive mark.

The respondent further contends, however, that there is a complete failure of proof by complainant on the issue of a secondary meaning. Insofar as this contention relates to the enjoining of respondent's use of "Donnelly, Inc." or "Donnelly's," whether the possessive "s" be attached or separated, or "Donnelly" with the sweeping tail, we are unable to agree.

The trial justice specifically found by refusing to accept respondent's testimony as credible that the change of the corporate name to "Donnelly, Inc." was designed to and did deceive the public by creating confusion, all to the damage of complainant. From an examination of the oral and documentary evidence, we are unable to say that he was clearly wrong.

The record establishes that a United States postal inspector was called in, apparently by respondent, to investigate misdirection of correspondence and packages. The complainant testified to some confusion prior to 1960, but insisted that it markedly increased after the change of respondent's corporate name in that year. That such a condition resulted was denied by respondent but his testimony was given no weight by the trial justice.

Nor are we persuaded that the trial justice was clearly

wrong in finding that "Donnelly's," as used by complainant had acquired a secondary meaning, the establishment of which fact was incumbent upon him to prove in order to obtain injunctive relief.

A number of cases from other jurisdictions are cited by respondent in support of his contention that complainant failed to prove by competent evidence that "Donnelly's" as used by him had in fact acquired a secondary meaning so as to associate it with complainant in the minds of prospective customers. See 1 Nims, Unfair Competition and Trade-Marks, §37, p. 154.

Recognizing that the trial justice was clearly warranted in finding a prolonged and continuous use of the trade name by complainant and his extensive advertising thereof, respondent argues that, even so, these facts constitute no proof that complainant's prolonged efforts bore fruit, as found by the trial justice. In support thereof he cites, inter alia, *Premier-Pabst Corp.* v. *Elm City Brewing Co.,* 9 F. Supp. 754.

However, respondent places undue stress on the emphasis given in the last-cited case to the necessity of proof by complainant that he has succeeded in establishing in the public mind an association between his goods and services and the trade-mark or trade name to which he claims an exclusive right. The burden of furnishing satisfactory proof is always on him who asserts a claim in law or equity. The respondent either overlooks or regards too lightly the observation by the court in the aforementioned case at page 760:

> "After all, just as a state of knowledge in a given individual is best proven by inference from the surrounding facts, so the proof of a recognition by the public of the identity of a producer or his goods is necessarily a matter of inference. The evidence will show against the proper background what the producer has done to impress his identity or that of his goods upon the purchasing public; and from all the subordinate facts the

trier will have to determine whether or not it follows with reasonable certainty that a public recognition of identity has in fact been achieved."

Noting that the extent of one's efforts with or, without advertising, the testimony of complainant, his witnesses and exhibits, or the successful stimulation of sales, although admissible, are not such factors as standing alone would be decisive, the court concluded: "But such testimony the trier will appraise, especially if it be disputed, in the light of his own common sense and in the last analysis reach his decision by applying his knowledge of human nature to the facts of the case."

From the testimony of complainant, his witnesses and exhibits and the extensive widespread advertising through the media of newspapers, television, radio, give-aways, labels and signs, coupled with the steady expansion of his business from a single establishment to the operation of four such establishments in several cities, the trial justice could find, as he did, that complainant's efforts to identify his trade name with his goods and services had borne fruit.

The trial justice was justified in concluding that respondent brought about the change with the intention of confusing and did confuse the public for gain to himself and loss to complainant, *Cady* v. *Schultz, supra,* and entered a decree enjoining respondent from use of the recently acquired corporate name "Donnelly, Inc."

Nor can respondent be heard to complain that he has been deprived of any right by the restraint of his surname used in connection with his corporate identity. The right to use one's own name in connection with his business does not extend to the assignment thereof to use by a corporation. *Winifred Warren, Inc.* v. *Turner's Gowns, Ltd.,* 285 N. Y. 62; *De Nobili Cigar Co.* v. *Nobile Cigar Co.,* 56 F.2d 324.

Nor is there any doubt that the use of the name "Donnelly" in such a manner as to readily associate it with the

distinctive style employed by complainant is an unlawful interference with the exclusive right of complainant, as found by the trial justice.

We are, however, troubled by the enjoining of the respondent from the use of the surname "Donnelly" independent of additional styling which would tend to confuse. As was held by this court in *Harson* v. *Halkyard, supra,* the complainant cannot be heard to object to the respondent's use of his own name when his signs, labels and advertisements are unlike in other respects. In our judgment, therefore, the decree appealed from grants to the complainant greater latitude of relief than that to which he is entitled.

In the case of Charles J. Donnelly, Inc. v. Donnelly Bros., Inc. (Donnelly, Inc.) and Thomas C. P. Donnelly, the appeal is sustained in part. The decree appealed from should be modified as above set forth, and therefore the cause is remanded to the superior court with direction to so modify it in accordance with this opinion.

In the case of Donnelly Bros., Inc. (Donnelly, Inc.) et al. v. Charles J. Donnelly, Inc. et al., the appeal is denied and dismissed pro forma.

*Roberts and Coffey, Matthew E. Ward,* for Charles J. Donnelly, Inc., appellee.

*John A. Varone,* for Donnelly Bros., Inc., appellant.