221 A.2d 446.

DONNELLY'S OF PROVIDENCE, INC., *et al. vs.* NEW ENGLAND
TELEPHONE AND TELEGRAPH COMPANY *et al*

DONNELLY'S OF PROVIDENCE, INC. (formerly CHARLES J.
DONNELLY, INC.) *vs.* NEW ENGLAND TELEPHONE.
AND TELEGRAPH COMPANY.

JULY 5, 1966.

PRESENT: Paolino, Powers, Joslin and Kelleher, JJ.

PowERS, J. This litigation was commenced in the superior court as two bills of complaint and a petition to adjudge the respondents in both causes in contempt of an ex parte restraining order issued by a superior court justice on the filing of the first of said bills of complaint. It is before us on three separate appeals, the last being the certification of certain questions as authorized by G. L. 1956, §9-24-25, as amended. See Rule 12d Supreme Court rules as amended.

The causes were consolidated for argument in this court because of the interlocking nature of the issues involved and the related interests of all parties to the proceedings. A working understanding of such issues and interests sug-

gests the advisability, if not necessity, of a skeletal discussion of the controversies which gave rise to the instant litigation.

Charles J. and Thomas C. P. Donnelly, hereinafter referred to as "Charles" and "Thomas," are brothers who for years have operated separate mercantile establishments devoted to the sale, tailoring and cleansing of men's clothes as well as the rental of formal wear. Each brother used the family name in various styles without dissension until sometime in 1961 when both brothers sought injunctive relief. See *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.,* 96 R. I. 255, 191 A.2d 143.

After the cause in that case was remanded to the superior court for entry of a decree, modified in Thomas' favor by the decision of this court, a decree was entered purporting to comply with the mandate of our decision. From this decree Thomas appealed, and holding that by the terms of the decree entered Charles obtained a greater latitude of relief than that to which he was entitled, we again remanded the cause for entry of a decree modified in accordance with our decision. *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.,* 97 R. I. 377, 198 A.2d 41.

From the decree entered in the superior court following our remand in the last-cited case, Thomas sought and obtained review by way of certiorari and we again held that the decree as entered required modification. The cause was again remanded and our decision therein is reported in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.,* 99 R. I. 480, 208 A.2d 741.

This last remand occurred April 5, 1965 and on April 9, 1965 Charles brought the first of the two bills of complaint herein being reviewed and designated as Appeal No. 15. It appears that after certiorari had been granted and the papers remanded as aforesaid, respondent New England Telephone and Telegraph Company, hereinafter called the

"telephone company," accepted certain listings for its 1965 directory from Thomas and informed Charles that it believed such listings conformed to the language of this court's mandate in 99 R. I. 480, 208 A.2d 741. See Appendix A. Moreover, the telephone company made known Thomas' proposed listings to Charles.

The April 9, 1965 bill of complaint prayed that the telephone company and Thomas, individually and in his corporate capacity, be temporarily and, after hearing, permanently enjoined from listing twenty-one specific trade names set forth in the bill of complaint. See Appendix B. The bill further prayed for the same injunctive relief against listing "any combination of other words with the name Donnelly which would tend to identify said Thomas C. P. Donnelly with your complainants beyond the limits of that which is unavoidable."

With the filing of said bill of complaint, hearing on the prayer for preliminary injunction was set for April 21, 1965, and notice thereof served on both respondents who, in the interim, were ordered restrained ex parte. The respondent telephone company filed its answer May 13, 1965 and Thomas' answer was filed on what appears to be September 10, 1965.

The record establishes that the telephone company's directories for the various metropolitan areas served are printed at varying but specified periods of the year and a deadline for accepting listings must be set for each printing. It further appears that the deadline for accepting listings in the directory for Providence and vicinity was set for April 12, 1965. When the restraining order of April 9, 1965 was served there was very little time for respondents Thomas and the telephone company to work out listings for the former which would not clearly be in violation of said order. However, certain listings were agreed upon and subsequently appeared in the directory, distribution of which began in the latter part of May. See Appendix B.

Upon examination by Charles of the listings assigned to Thomas in the directory when distributed, he brought the second bill of complaint naming the telephone company as sole respondent. It was filed May 26, 1965 and is here designated as Equity No. 3284. The bill recited the gravamen of complainant's grievance in Appeal No. 15, averred that the listings in the "white" pages of the directory being distributed were in willful violation of the restraining order of April 9, 1965 which was still outstanding, and prayed that so many of the directories as had already been distributed be repossessed and that the telephone company be temporarily and permanently enjoined from distributing the directory in question.

Hearing on the prayer for a preliminary injunction was assigned to June 2, 1965, notice thereof ordered served on respondent telephone company and, in the interim, it was restrained ex parte from further distribution of the directory.

It appears that some 140,000 copies of the directory, out of 325,000 to be distributed, were in the names of subscribers when the telephone company ceased distribution. However, motivated by a concern for the undeniable public interest, a superior court justice vacated the restraining order on May 28, 1965 and distribution resumed. Further, to the extent that the resumption of distributing the remaining directories would be in violation of the restraining order entered April 9, 1965 in Appeal No. 15, said order was modified to permit the completion of distribution.

The respondent telephone company promptly filed an answer and the cause was heard on the merits of the prayer for a permanent injunction on June 1, 1965. At the outset thereof it was agreed that the court might take judicial notice of the state of the record in Appeal No. 15 in reaching a decision on the proceedings in Equity No. 3284.

Parenthetically, it is to be noted that in asking to have all three causes here under review consolidated, the parties

tacitly agreed to make the record in each cause part and parcel of the others in the instant proceedings.

At said June 1 hearing, William H. Kelley, an employee of the telephone company, testified that for a subscriber to be listed in the classified yellow pages of the directory it is necessary that he have the same listing in the white pages. Significantly, however, he also testified that a subscriber was not required to contract for a listing or listings in the yellow pages of every or any listing for which he contracted to have in the white pages. It appears that every listing is a separate purchase of space.

In the view we take of appellant's contentions in connection with his appeal in Equity No. 3284, it would serve no worthwhile purpose to discuss the evidence adduced at the hearing of June 1, 1965. Suffice it to note that the trial justice concluded that since the question of whether the distribution of the directories violated the restraining order of April 9, 1965 was controlled by a prior question of whether the listings for Thomas therein violated said order, complainant should have invoked the protection of equity by proceeding in the suit to which the order was related and in which Thomas was a party. He therefore denied and dismissed the bill of complaint without prejudice to Charles in said other cause and a decree was entered accordingly. From this decree Charles duly appealed.

The appellant complainant in support of his reasons of appeal makes several contentions as to why said decree is erroneous, but they require no discussion. By reason of the subsequent proceedings in Appeal No. 15, the controversy in Equity No. 3284 became moot. As heretofore noted by order of the court dated May 28, 1965, distribution of the 1965 directory was permitted and on March 14, 1966 the superior court justice, under rule 62(c), entered an order by the terms of which the telephone company is at liberty to republish and distribute said directory in 1966. Thus complainant's rights to a permanent injunction on the

issue of the challenged listings will be dispositive of Charles' rights by this court in passing on that issue as raised by the certification of questions in Appeal No. 15. The appeal in Equity No. 3284 is therefore dismissed pro forma and the papers in the cause are ordered remanded to the superior court for further proceedings.

Subsequent to the entry of the last-mentioned decree on September 22, 1965, Charles, on October 7, 1965, filed a petition to adjudge Thomas and the telephone company in willful contempt of the ex parte restraining order entered April 9, 1965 as aforesaid. It recites the restraining order of April 9, sets forth the listings assigned to Thomas in the white pages of the directory, avers that the latter are in willful violation of the terms of the restraining order, and prays judgment. Both respondents made due answers and denied that the listings complained of constituted willful contempt.

The petition was heard on February 1, 1966, together with the bill of complaint on the prayer for a temporary injunction. The two were heard in chambers, no testimony was offered, and on February 7, 1966 judgment was entered for respondents on the petition to adjudge in contempt, the prayer for a temporary injunction was denied, and the restraining order of April 9, 1965 was vacated. From the adverse judgment in the contempt proceedings Charles duly appealed to this court. Thereafter, on the prayer for a permanent injunction, the parties sought and obtained certification of certain questions. We shall first consider appellant's contentions on the appeal in the contempt proceedings.

The appellant argues that a casual comparison of the listings specifically restrained with those requested by Thomas and accepted by the telephone company as shown in Appendix B reveals a willful violation of the court's order. To the contrary, we find them to be similar but not

identical. Considering that Thomas had a right to be listed in some manner and the telephone company as a public utility had an obligation to accept Thomas as a subscriber, appellant cannot complain about similarity. Having obtained an order restraining Thomas and the telephone company from the publication of listings which appellant selected with shotgun intent, we cannot say that it was error for the trial justice to refuse to enlarge the target area. See *Jackson Furniture Co.* v. *Lieberman,* 65 R. I. 224, and *Sunbeam Corp.* v. *Ross-Simons, Inc.,* 86 R. I. 189. However, appellant vigorously argues that if the listings selected by Thomas and accepted by the telephone company do not constitute a willful violation of the restraining order as to those listings specifically enjoined, they are clearly violative of that part of the order which restrained the use of the name "Donnelly" with any combination of other words which would tend to identify Thomas with Charles beyond the limits of that which is unavoidable.

We find no merit in this contention as it relates to the telephone company. Both respondents, in their answers which stand uncontradicted, state that they were not served with the restraining order until April 12, 1965, the cutoff date for a would-be subscriber to be assured of a listing in the 1965 directory. As heretofore noted, the telephone company was under an obligation to accept Thomas as a subscriber. That it was desirous of complying with its obligations to Thomas as well as to appellant by virtue of any ruling of the court, is manifest from its conduct in revealing to Charles listings previously requested by Thomas after our remand of April 5, 1965. With very little time in which to make a determination of whether Thomas' subsequent request constituted a combination that was beyond the limits of the unavoidable and having regard for its obligation as a public utility, the telephone company, in our judgment, made its decision with a view to meeting that obligation rather than out of an intentional or careless

disregard for the order of April 9, 1965. Further, Charles is a party to the certification for clarification of the very language 'on which his contention of willful contempt is predicated and can hardly be heard to complain that the telephone company was willfully contemptuous of an order that was not even clear to him.

With regard to Thomas, however, the question is more troublesome. Unlike the telephone company he was not confronted with a dual obligation. Candor compels us to acknowledge that a mere glance at the respective listings for Charles and Thomas in the white pages could promote uncertainty in the mind of one shopping by telephone and unfamiliar with the two merchants. Moreover, it not being necessary to contract for a listing in the related sections of the classified yellow pages of every listing contracted for in the white pages, Thomas confined his listing in the yellow pages under the headings "Tuxedo Renting," "Uniforms-School," "Cleaners," "Tailors," "Tailors-Custom" and "Clothing-Men's" to the single name "Donnelly" in bold type, followed by the address and telephone numbers. He contracted for such a listing in the white pages and, as previously noted, he could then contract for that listing in every appropriate section of the yellow pages. That he did not feel the necessity to so identify his business in the yellow pages to which the public commonly turns when shopping for merchandise or services as distinguished from looking for the telephone number of a desired merchant, is open to the suspicion that he was intentionally using a combination of words in the white pages which would tend to identify him with Charles.

However, the burden of establishing a willful violation essential to the contempt judgment sought was on appellant. He offered no testimony or other evidence, being content to submit the question on the allegations of his petition and respondent's answers. After careful consideration we conclude that appellant failed to meet his bur-

den, succeeding only in establishing suspicion, which this court in *Jackson Furniture Co.* v. *Lieberman, supra,* held to be insufficient, however strong that suspicion might be.

The appeal in Appeal No. 15 therefore is denied and dismissed and the cause is ordered remanded to the superior court for further proceedings.

After the hearings on the petition to adjudge in contempt and the prayer for a temporary injunction as set forth in the bill of complaint had resulted in a denial of both such causes, the prayer for a permanent injunction was assigned for hearing to March 14, 1966. On that day, at the request of the parties, a superior court justice certified to this court for our determination, pending judgment, three questions on an agreed statement of facts. The facts agreed upon are readily discernible from what has gone before and need not be repeated. The questions thus certified are in substance as follows:

> "a. Did the listings granted to Thomas C. P. Donnelly by the New England Telephone and Telegraph Company of the names listed in paragraph 1. e. violate the Decree entered pursuant to the order of this Honorable Court as it appears in paragraph 1. c.?
>
> "b. Do the names listed in paragraph 1. d. violate the Decree entered pursuant to the order of this Honorable Court as it appears in paragraph 1. c.?
>
> "c. How is the language,
>
> " '. . . and from using the surname "Donnelly" with other words which would tend to identify him (Thomas C. P. Donnelly) with Complainant beyond the limits of that which is unavoidable . . .' (parenthesis added)
>
> entered pursuant to the order of this Honorable Court to be interpreted in order that the respective rights of all the parties will be protected and further litigation avoided?"

The first two questions may be considered together and much of what is said with relation to them is equally applicable to the third question. Thomas, we have heretofore

held and now repeat for what should be the last time, being in a business identical to that of Charles is entitled to use the family name in the promotion of that business, but in so doing cannot enlarge thereon by the use of other words so resembling combinations long used by Charles as to create an impression that the two merchants are one and the same. Thus we hold that in connection with the first question the listings "Donnelly Formals For Men" and "Donnelly Uniforms For Schools" so simulate the name and advertising of Charles as to tend to identify Thomas as Charles so as to be contrary to the terms of the decree set forth in Appendix A. But the use of such single words in connection with his name as "clthg," "Clnsng," "Tailoring" or such words coupled with "Men's" is no more than that to which Thomas is entitled since the barest description of his business could not say less. Furthermore, Charles confines his advertising of tuxedos to "Formal Wear" and we do not perceive that Thomas' use of "Tuxedos For Dress" is an infringement of any protection guaranteed to Charles by the terms of the decree relied upon.

From the foregoing it follows that all of the twenty-one listings set forth in Appendix B are violative of the decree in question except those numbered 5, 6, 9, 14 and 15. With regard to the school uniform business, we have previously noted that there is an appropriate designation in the yellow pages for those who wish to advertise such business, and Thomas, in our judgment, can successfully promote his interest in such a business by the simple listing of "Donnelly" as such listing appears in the 1965 directory.

With regard to the third question, we note that it does not submit to a definitive answer but rather seeks that which would be tantamount to an advisory opinion. So postured, we are not required and deem it inadvisable to conjure up combinations which, considered in a vacuum as must be the case, might or might not prove to be within

the prohibition laid down in the controlling decree. Suffice it to say that in our answers to the first two questions we hold that sufficient guidelines have been laid down so as to prevent future litigation.

In Equity No. 3284 the complainant's appeal is dismissed pro forma; in Appeal No. 15 the complainants' appeal is denied and dismissed, the judgment therein affirmed, and the certified questions answered; and each cause is remanded to the superior court for further proceedings.

## APPENDIX A

The decree as modified by this court in our remand of April 5, 1965 is as follows:

"1. That Thomas C. P. Donnelly and Donnelly, Inc. formerly Donnelly Bros., Inc. be and hereby are permanently enjoined from using the words 'Donnelly, Inc.'; and from using the surname 'Donnelly' by enlarging thereon by resorting to a styling which would tend to identify him with complainant beyond the limits of that which is unavoidable; from using the surname 'Donnelly' with other words which would tend to identify him with complainant beyond the limits of that which is unavoidable; and from using the surname 'Donnelly' or its possessive form with an underline in any form, whether the underline extends the full length of the word or not and whether it is an extension of the tail of the letter 'Y' or not and whether the letters are in a reverse or forward slant.

"2. That the respondents, Thomas C. P. Donnelly and Donnelly, Inc., formerly Donnelly Bros., Inc. be and hereby are permanently enjoined from simulating the name and the advertising of Charles J. Donnelly, Inc., Donnelly's of Warwick, Inc., Donnelly's of Cranston, Inc. and Charles J. Donnelly, and from confusing or misleading the public thereby and from diverting patronage and good will of Charles J. Donnelly, Inc., Donnelly's of Warwick, Inc., Donnelly's of Cranston, Inc., and Charles J. Donnelly, thereby."

The specific names sought to be permanently enjoined and actually restrained ex parte are as follows:

Listings Restrained
1. Donnelly Formals
2. Donnelly Co. Formals
3. Donnelly Company Formals
4. Donnelly Formal Wear
5. Donnelly Tuxedos
6. Donnelly Tuxedo Renting
7. Donnelly Dress Suits
8. Donnelly Dress Suit Renting
9. Donnelly Clothing
10. Donnelly Clothing of Rhode Island
11. Donnelly Company
12. Donnelly Co.
13. Donnelly Company—Men's Furnishings
14. Donnelly Men's Clothing
15. Donnelly Cleansing & Tailoring
16. Donnelly Men's Wear
17. Donnelly of Rhode Island
18. Donnelly School Uniforms
19. Donnelly Custom Suit
20. Donnelly, Inc.
21. Donnelly, Incorporated

Listings Accepted
1. Donnelly clthg
2. Donnelly Clnsng.
3. Donnelly Clothing For Men
4. Donnelly Formals For Men
5. Donnelly Tailoring
6. Donnelly Tuxedos For Dress
7. Donnelly Uniforms For Schools

*Matthew E. Ward,* for complainants.

*Tillinghast, Collins & Tanner, Nathaniel S. Thayer,* for respondent New England Telephone and Telegraph Company.

*Charles F. Cottam,* for respondent Donnelly Bros., Inc. et al.