252 A.2d 28.

FLORENCE L. WOODDELL *vs.* HOLLYWOOD HOMES, INC., *et al.*

MARCH 24, 1969.

PRESENT: Roberts. C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This amended bill of complaint[1] was heard before a justice of the superior court on bill, answer and proof. The bill prayed that certain deeds be declared null and void, that the property described in such deeds be ordered reconveyed to the complainant, that an accounting be taken, and that respondents be enjoined from disposing of the property in question. After the hearing the trial justice rendered a written decision denying and dismissing

---

[1]The cause was heard and decided by the superior court several years prior to the effective date of the new rules of civil procedure of that court.

the bill of complaint. The case is before us on the complainant's appeal.[2]

The complainant and one T. Russell McGrath were the only witnesses who testified in the superior court. At the request of the trial justice, counsel for the respondent filed with the superior court a memorandum containing a description of certain documents pertinent to the inquiry before the court. It appears therefrom that complainant and her husband signed a mortgage in the amount of $11,500 to First Federal Savings and Loan Association. The mortgage dated February 25, 1949, was recorded on March 3, 1949. The complainant admits her signature on this instrument. The following documents are also involved in this controversy:

A deed dated June 30, 1950, purportedly signed by complainant and her late husband conveying the premises described in the amended bill to respondent Hollywood Homes, Inc.

A deed dated February 17, 1953, from Hollywood Homes, Inc., signed by J. Raymond Dubee, president and treasurer, conveying said property to respondent Alice Debooserie. Another of the exhibits is an instrument entitled "Joint Meeting of Stockholders and Directors of Hollywood Homes, Inc."[3] It was recorded in the land records of the

---

[2]The record fails to disclose the entry of any decree by the parties. For this reason we ordered the clerk of the supreme court to transmit the papers to the superior court to enable the parties to enter a decree, based on the decision of the trial justice, nunc pro tunc. This has been done and we have treated the appeal as taken in compliance with G. L. 1956, §9-24-1, as it read in 1962.

[3]"*Deed book 250 page 79*

"Joint Meeting of Stockholders and Directors of Hollywood Homes, Inc.

"At a joint meeting of the stockholders and directors of the corporation, held in Room 338 Hospital Trust Building, Providence, R. I., at 2 P.M. on Friday, February 6, 1953, it was

"*VOTED*: to authorize J. Raymond Dubee, President and Treasurer of the corporation, to make sale of real estate situated at 14-18 South Atlantic Avenue, Warwick for $11,600 subject to a first mortgage to First Federal

City of Warwick on February 27, 1953. This instrument purports to grant to J. Raymond Dubee, president and treasurer, of Hollywood Homes, Inc., authority to sell the property in question, in accordance with the provisions of a decree of the probate court entered on February 16, 1953, in the proceedings involving the estate of complainant's deceased husband.

A deed dated April 9, 1953, from Alice Debooserie conveying said property to respondent George A. Kulz.

A deed dated April 28, 1953, from George A. Kulz conveying the premises to respondents Eugene and Ernestine Escobar.

Each of the foregoing conveyances was recorded in the land records of the City of Warwick. The premises presently stand on record in the names of the last mentioned grantees, the Escobars.

The complainant's husband died on April 10, 1951, leaving a will which was filed for probate in the probate court of the City of Warwick and allowed by said court on May 24, 1951. She alleges in her bill of complaint that a provision of the will reads as follows:

> "To my wife, Florence, the corporation stock comprising ownership of the property on South Atlantic Avenue, Pawtuxet, R.I. and the corporation stock known as Hollywood Homes, Inc., a Rhode Island corporation."

In support of the allegations in her bill of complaint the

_____

Savings & Loan Association, and to execute and deliver on behalf of the corporation a Warranty Deed of said premises. He is further authorized and empowered to make the usual adjustments and to pay a broker's commission of 5%.

"This vote is in accordance with the provisions of a Decree of the Probate Court of the City of Warwick entered February 16, 1953 in the proceedings on the Estate of Henry F. Wooddell, Estate No. 5410.

Attest: s/ Bernard R. Pollock—Secretary

Recorded: February 27, 1953."

complainant testified in substance that the signature on the June 30, 1950 deed to Hollywood Homes, Inc.,[4] is not her signature; that J. Raymond Dubee did not hold the office of president of the corporation on February 17, 1953, as is recited in the deed from the corporation to Alice Debooserie; that the conveyance from the corporation to Alice Debooserie was not properly made because the seal affixed to that deed was not that of Hollywood Homes, Inc., but rather that of another corporation; and that Hollywood Homes, Inc. had no lawful authority to convey the premises on February 17, 1953. During cross-examination complainant was asked to identify and did identify her signature on various instruments which were subsequently introduced in evidence.

The respondents presented T. Russell McGrath as a witness. He was the president of the First Federal Savings and Loan Association in Providence and a duly commissioned notary public. He testified that his name appeared as notary public and witness to the signatures on the June 30, 1950 deed; that he knew complainant's late husband; that although he did not know her at that time, he knew her since her husband's death because she had come into the bank on several occasions with her daughter; that she was the person who appeared before him to sign the deed in question; that in his records at the bank he had a signature card with her signature on it dated February 25, 1949; that he brought it to court "to make sure"; and that the signature on the June 30, 1950 deed was her signature. After testifying that the signature on the deed in question was that of complainant, Mr. McGrath was asked the following question in direct examination:

"And the Mrs. Wooddell that you identified here is the woman that appeared before you and signed this deed?"

---

[4]Hollywood Homes, Inc. shall sometimes be referred to herein as "the corporation."

He replied as follows:

> "I don't know— I won't say it as of that day. This is Mrs. Wooddell. I have seen her and it is her signature that is in our records but I do not remember that she was there on that—the 30th day of June. I couldn't swear to that."

The following pertinent testimony was elicited from Mr. McGrath during his cross-examination by complainant's counsel.

> "Q Now, Mr. McGrath, you have stated that you are not sure that that is the Florence L. Wooddell, she did sign in your presence;—that this particular Florence L. Wooddell had signed in your presence on that date in the year 1950?"
>
> "A I would say since I witnessed it at that time that she was there."
>
> "Q You don't know whether or not someone appeared and stated that she was Florence L. Wooddell?"
>
> "A I suppose that is possible. We see a great many people in the course of a day."
>
> "Q You are not sure that that is the same Florence Wooddell."
>
> "A I am sure that this is Florence Wooddell's signature."
>
> "Q Well, how can you state that that is Florence Wooddell's signature?"
>
> "A Because we have several other examples of it at the bank."

Mr. McGrath admitted that he was not a handwriting expert and that he did not see petitioner sign the signature card. He was then asked the following question and gave the following answer:

> "Q You don't know whether or not it is the same Florence Wooddell that signed that card either, do you?"
>
> "A No, except that the signature on the card corresponds to the signature on the deed and also the other papers we have on the same date."

The trial justice grounded his decision denying and dismissing the bill on complainant's failure to sustain her bur-

den of proof on any of the issues on which she relied. Additionally, he felt that she was barred because of laches on her part.

The complainant's first argument relates to her claim that she did not sign the June 30, 1950 deed and that it was a forgery. In oral argument before us her counsel conceded, and correctly so, that, having alleged a forgery, she had the burden of proving the alleged forgery. *C. J. Donnelly, Inc.* v. *Donnelly Bros., Inc.*, 96 R. I. 255, 263, 191 A.2d 143, 147; *Gallo* v. *American Egg Co.*, 76 R. I. 450, 459, 72 A.2d 166, 171. There is no necessity to repeat the testimony on this issue. Suffice it to say that in reaching his conclusion that she failed to sustain her burden, the trial justice not only relied on Mr. McGrath's testimony that it was her signature, but also rejected complainant's testimony because of her unexplained failure to call a material witness. We find no error in his conclusion. In fact, an examination of the record discloses ample other competent evidence which supports his finding on this issue.

Testimony based on a comparison of a disputed signature with genuine signatures produced in court is competent evidence[5] to prove or disprove the genuineness of a signature. Expert evidence is not indispensable to prove the authenticity of a signature.[6]

The complainant next contends that the trial justice erred in ruling that the conveyance by the corporation to Alice Debooserie by deed dated February 17, 1953, was proper. Assuming, without deciding, that this issue is

---

[5]General Laws 1956, §9-19-17

"Comparison of writings.—Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

[6]For a discussion of this subject see 80 A.L.R.2d 272.

properly before us, we find no merit in complainant's position. The trial justice based his decision on his conclusion that complainant failed to sustain her burden of proof. She argues that the trial justice overlooked "Complainant's Exhibit No. 3," which purports to be a letter dated April 18, 1951, from the late J. Raymond Dubee addressed to her requesting her to sign certain stock certificates in her capacity as president and also requesting that Shirley Wooddell sign as secretary. We cannot agree with her assertion that the trial justice overlooked this letter. Indeed, he expressly referred to it in his decision and, after noting that this took place in 1951, he stated that no records had been produced one way or the other by either party, other than the copy of the minutes of the joint meeting of the stockholders and directors on February 6, 1953, which was recorded on February 27, 1953 in the land records office.

He went on to say that

> "* * * other than the * * * deed itself and the copy of the alleged vote * * * we have nothing before the Court whatsoever about the corporation one way or the other other than the sole statement of the complainant that she herself was the president of the corporation."

After discussing complainant's failure to do anything until July 19, 1958, he then rejected her testimony because of her unexplained failure to call Shirley Wooddell, the alleged secretary of the corporation, as a witness. The trial justice expressed his feeling in the following words:

> "* * * the complainant did not produce a witness which the Court feels it has a right to believe she should have produced if her story were true."

On this record we cannot say that the trial justice erred in holding that the complainant failed to sustain her burden of proving that the conveyance was improper.

The complainant's final contention is that the conveyance from the corporation to Alice Debooserie is invalid

because the seal affixed to the deed was that of another corporation and not of Hollywood Homes, Inc. We conclude without unnecessary discussion that the complainant's instant contention is without merit. No seal is necessary to render valid an instrument conveying lands, tenements or hereditaments. The provisions of §34-11-2[7] apply to corporations as well as to individuals. The use of the corporate seal on the deed in question was mere surplusage. See 18 Am. Jur.2d, *Corporations* §155, for a discussion of the subject.

On the view we have taken, it becomes unnecessary to discuss the question of laches.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court.

*Israel Moses,* for complainant.

*Ralph T. Lewis, Jr.,* for respondents.

---

[7]"Seal not required.—No seal shall be required to any instrument conveying lands, tenements or hereditaments; and any instrument purporting to convey lands, tenements or hereditaments may be referred to as, and shall be, a deed, though no seal be affixed thereto; and the word 'covenant' used in any deed or instrument to which no seal is affixed, shall have the same effect as though a seal had been affixed thereto."