Gary M. GARRETT, Petitioner,

v.

ARROWHEAD IMPROVEMENT ASSOCIATION; The Industrial Claim Appeals Office of the State of Colorado; Robert Husson, Director, Colorado Division of Labor, Workers' Compensation Section; and Colorado Compensation Insurance Authority, Respondents.

No. 91SC276.

Supreme Court of Colorado, En Banc.

March 10, 1992.

and now reverse and remand for further proceedings.

Withers, Seidman & Rice, P.C., Charles E. Withers, Glenwood Springs, for petitioner.

Paul Tochtrop, Denver, for respondents Arrowhead Improvement Ass'n and Colorado Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Mary Karen Maldonado, First Asst. Atty. Gen., Thomas S. Parchman, Asst. Atty. Gen., Denver, for respondent The Indus. Claim Appeals Office.

No appearance for respondent Robert Husson, Director, Colorado Div. of Labor, Workers' Compensation Section.

Justice LOHR delivered the Opinion of the Court.

### I.

This case presents an issue concerning the timeliness of a claimant's filing of a petition to reopen a workers' compensation proceeding in order to seek additional disability benefit payments based on a worsened physical condition. An administrative law judge ("ALJ") held claimant Gary M. Garrett's petition to reopen time-barred by section 8–43–303(2)(a), 3B C.R.S. (1991 Supp.). An Industrial Claim Appeals Panel ("Panel") affirmed, specifically rejecting the claimant's arguments that the employer and insurer should be estopped to assert the bar of the statute of limitations because of their failure to furnish the claimant with a copy of a doctor's report, as required by regulation. The Colorado Court of Appeals affirmed the Panel's order by a divided vote. *Garrett v. Arrowhead Improvement Ass'n,* 815 P.2d 979 (Colo.App.1991). We granted certiorari

### II.

We derive the following facts from the record developed in proceedings before the Department of Labor and Employment. Arrowhead Improvement Association ("Arrowhead") employed the claimant, Gary M. Garrett, to provide security services. Garrett injured his back on December 28, 1980, while unloading a snowmobile in preparation for a routine security patrol. Following the injury, Arrowhead filed a report of accident with the State Compensation Insurance Fund ("Fund"), Arrowhead's provider of workers' compensation insurance. The Fund admitted liability for temporary total disability but denied liability for permanent partial disability. Garrett contested the denial of permanent partial disability, and the matter ultimately was heard before a referee in the Department of Labor and Employment. The referee entered a final order dated June 7, 1985, awarding the claimant permanent partial disability benefits in the amount of $12,046.94, based on a ten percent disability, payable at a rate of $84.00 per week. Garrett received his final disability payment on September 10, 1986.

On November 25, 1988, Garrett filed a petition to reopen his claim based upon the deteriorating condition of his back. When a claimant's condition changes, he has grounds for filing a petition to reopen the award in his case. § 8–43–303, 3B C.R.S. (1991 Supp.);[1] Rule X(B)(1), 7 C.C.R. 1101–3. This right, however, is subject to a statute of limitations. The statute of limitations in effect at the time Garrett filed his petition required a claimant seeking additional disability benefits to file within two years of the date the last disability benefits became due and payable. Ch. 50, sec. 6, § 8–53–113(2), 1988 Colo.Sess.Laws 385, 387–88.[2] Since Garrett received his last disability payment on September 10,

---

1. The version of the statute in effect during the relevant time frame, § 8–53–113, 3B C.R.S. (1986). also allowed for a petition to reopen upon a showing of a change in condition.

2. The current statute appears at § 8–43–303(2), 3B C.R.S. (1991 Supp.).

1986, his filing deadline was September 10, 1988.[3] However, Garrett filed his petition to reopen on November 25, 1988, over two months past the deadline. Garrett's petition stated, "[c]laimant [is] waiting for a report from Dr. Da Silva." The applicable Department of Labor and Employment regulation requires that a petition to reopen be accompanied by a supporting medical report. Rule X(B)(2), 7 C.C.R. 1101–3.[4]

Prior to the time Garrett filed the petition to reopen, Arrowhead and its insurer, the Fund, received a medical report from Garrett's treating physician, Dr. Da Silva, indicating that Garrett's back problems had worsened.[5] They received the report on August 12, 1988, a date before the limitations period expired. However, they failed to provide a copy of this report to Garrett or his attorney, despite a regulatory obligation to reveal pertinent medical documents. Rule XI(M)(3), 7 C.C.R. 1101–3. Garrett's attorney learned of this failure during a hearing on the petition to reopen held on January 10, 1989. Garrett's counsel acknowledged during oral argument that Garrett had knowledge of some of the content of the report prior to this time based on talking with Dr. Da Silva but denied knowledge of other parts suggesting a worsening of Garrett's condition.

Arrowhead and the Fund opposed Garrett's petition to reopen because Garrett failed to file within the statute of limitations period, i.e., two years after the final disability payment became due and payable, and failed to attach a medical report to his petition. Following the hearing, the ALJ issued a supplemental order granting the petition to reopen. The ALJ found that Dr. Da Silva's medical report was sufficient in content and that the claimant would have attached it to the petition had it been supplied to him as required. The ALJ then allowed additional medical benefits, but denied further disability benefits because the petition to reopen was not filed within the period allowed by the statute of limitations relating to those latter benefits.[6] The Panel affirmed. The Panel rejected Garrett's arguments that Arrowhead and the Fund should be estopped from asserting the statute of limitations, or, in the alternative, that the statute of limitations should be tolled "because the respondents did not ... provide the claimant with a copy of Dr. Da Silva's July 1988 report until January 1989."

The court of appeals affirmed. It too rejected Garrett's estoppel and tolling arguments. *Garrett*, 815 P.2d at 981. Although the "respondents had a duty to provide [Garrett] with a copy of Dr. Da Silva's report," the court concluded that their failure to do so amounted to harmless error. *Id.* The court reasoned:

> Here, there is no evidence that the respondents authorized or requested Dr. Da Silva's July 1988 medical report, or

---

**3.** The parties agree that the date on which the statute of limitations was triggered was September 10, 1986, when Garrett received his last disability payment. We assume from this that the benefit was "due and payable" on that date. *See* Ch. 50, sec. 6, § 8–53–113(2), 1988 Colo.Sess. Laws 385, 387–88.

**4.** The Department of Labor and Employment promulgated all the rules and regulations referred to in this opinion.

**5.** Although the record does not establish whether Arrowhead received a copy of the medical report, the parties in their briefs assume that it did. For the purposes of certiorari review, we too will assume that Arrowhead received a copy of the medical report.

**6.** Under the statute of limitations in effect at the time of Garrett's petition, different events triggered the running of the statutory period for reopening an award to allow additional medical benefits only and for reopening to allow further disability benefits. This case involves only the disability benefits issue. The statute governing reopening an award to seek such benefits provided, in pertinent part, that

> [a]t any time within two years *after the date the last temporary or permanent disability benefits or dependent benefits excluding medical benefits* become due or payable, the director or an administrative law judge may, after notice to all parties, review and reopen an award on the ground of an error, a mistake, or a change in condition .... If an award is reopened under this paragraph (a), *compensation and medical benefits* previously ordered may be ended, diminished, maintained, or increased....

Ch. 50, sec. 6, § 8–53–113(2)(a), 1988 Colo.Sess. Laws 385, 387–88 (emphasis added).

that they intentionally withheld that report from claimant. . . .

Further, there was no evidence presented that claimant delayed the filing of his petition to reopen because he was waiting for a written report from Dr. Da Silva. Nor is there evidence that, absent the report, claimant lacked a basis for asserting a change in his physical condition.

*Id.* at 980–81. The court of appeals found that the absence of evidence establishing detrimental reliance prevented Garrett from making an effective estoppel argument. *Id.* at 981.

Garrett asserts that Arrowhead and the Fund violated Rule XI(M)(3), 7 C.C.R. 1101–3, by failing to provide the medical report, and that this violation should toll the statute of limitations. He argues that if tolling turns on a showing of prejudice or detrimental reliance, the case should be remanded for an evidentiary hearing on these issues.

### III.

As we have previously observed, Garrett failed to file his petition to reopen within the time allowed by the controlling statute of limitations. Thus, absent some basis for avoiding the application of that statute, Garrett's claim for disability benefits is time-barred.

Garrett argues that the bar of the statute of limitations should be removed based upon the failure of Arrowhead and the Fund to provide him with a copy of the medical report. This failure violated regulations set forth by the Department of Labor and Employment. Rule XI(M)(3), 7 C.C.R. 1101–3, requires:

> Each party shall promptly exchange with all counsel of record as well as filing with the division a copy of each medical report which:
>> Recommends surgery or treatment for improvement of the claimant's condition; or
>> Indicates a residual permanent disability; or
>> Indicates a date of maximum improvement or return to work; or
>> Contains a narrative history or any other information germane to the past, present or future condition or conditions of the claimant.

By enacting this regulation, the Department of Labor and Employment established a policy mandating the disclosure of pertinent medical information.

In assessing the importance of the failure of Arrowhead and the Fund to provide Dr. Da Silva's report, it is necessary to understand the role a medical report plays in filing a petition to reopen. A petition to reopen must be accompanied by a medical report. Rule X(B)(2), 7 C.C.R. 1101–3, provides:

> When a petition to reopen is filed due to a change of condition, the petition must be in the form prescribed by the director and accompanied by a physician's report stating the claimant's present condition, how his/her condition has worsened or improved and estimating the percentage of impairment and the additional periods of temporary disability, if any.

A medical report, therefore, plays a crucial role in supporting a petition to reopen a disability claim.

Garrett contends that the failure of an employer or its insurer to provide a workers' compensation claimant with a copy of a medical report relating to the worsening of his condition should prevent application of the statute of limitations based on equitable considerations. We have previously recognized that equity provides a basis for tolling a statute of limitations in appropriate circumstances. *Strader v. Beneficial Finance Co.*, 191 Colo. 206, 211–12, 551 P.2d 720, 724 (1976); *Klamm Shell v. Berg*, 165 Colo. 540, 546, 441 P.2d 10, 12 (1968); *see Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App.1991) (recognizing the principle but holding it inapplicable to the facts).[7]

---

**7.** Many cases recognize that where a defendant engages in fraudulent concealment of facts pertinent to the existence of a claim, the court may toll the statute of limitations. *E.g., First Interstate Bank v. Piper Aircraft Corp.*, 744 P.2d 1197, 1200 (Colo.1987); *Owens v. Brochner*, 172 Colo.

We have held that a defendant's failure to provide information that he was under a statutory duty to disclose provided an equitable basis for tolling the statute of limitations. *Strader*, 551 P.2d at 724. In *Strader*, a finance company failed to disclose the annual interest rate on a loan in violation of the Uniform Consumer Credit Code's disclosure requirements. When the borrowers learned the true rate sometime later, they promptly sought judicial relief, including damages and attorney fees. The finance company asserted the bar of a one year statute of limitations running from the date of the occurrence of the violation. We held that the statute of limitations was tolled under the doctrine of equitable estoppel. In so holding, we observed:

> [I]t has been held that a party will not be heard to plead the statute of limitations if he himself is not in compliance with his statutory duty. *Alfred v. Esser*, 91 Colo. 466, 15 P.2d 714 (1932); *Berkey v. County Commissioners*, 48 Colo. 104, 110 P. 197 (1910).

191 Colo. at 212, 551 P.2d at 724. Equity often requires tolling: "To allow [the finance company] to benefit from its own wrongdoing by its failure to comply with its statutory duty of disclosure would be highly inequitable." *Id.*

*Klamm Shell* involved facts dissimilar from those in the present case, but it serves to illustrate the rationale underlying equitable tolling. In *Klamm Shell*, we held that a one year statute of limitations governing assault and battery was tolled when the very injury of which the plaintiff complained caused her to become insane after the statute began to run but before the one year period expired. The statutory exception for persons under disability did not apply because it required that persons claiming its benefits have been insane when the cause of action accrued. We answered the defendant's contention that the statute of limitations barred the claim as follows:

> To uphold the defendant's contention in this case would, in our view, be unconscionable and would violate basic equitable concepts, which may be invoked by trial courts when confronted with facts which impel equitable treatment. Under the facts here presented, we hold that equity contains within its purview overriding concepts which proclaim that a defendant on the basis of plain justice should not be allowed to rely on a statute of limitations, where his intentional tort has caused mental incapacity arising after the cause of action accrued but before the expiration of the period of limitation.

165 Colo. at 545, 441 P.2d at 12. Should a court apply the statute of limitations rigidly in all circumstances,

> rather than promoting justice, the statute of limitations would then become an effective instrument for injustice. When this situation occurs, trial courts properly may ... fashion an equitable exception to the statutory limitation period.

*Id.* at 546, 441 P.2d at 13. *Klamm Shell* rests on the principle that a person should not be permitted to take advantage of his own wrong. *Id.* at 546, 441 P.2d at 12; *cf. Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944) (equitable estoppel prevents defendants who concealed existence of cause of action from plaintiffs during limitations period from asserting bar of statute).

Courts in other jurisdictions adhere to the principle that a statute of limitations is subject to equitable tolling in various factual circumstances where fairness requires it. *E.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Addison v. State*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 226–27, 578 P.2d 941, 942–44 (1978); *Christo v. Edward G. Boyle Ins. Agency, Inc.*, 402 Mass. 815, 525 N.E.2d 643, 645 (1988); *Galligan v. Westfield Centre Serv., Inc.*, 82 N.J. 188, 412 A.2d 122, 124–25 (1980). The equitable tolling concept is widely accepted. We next consider whether the statute of

---

525, 474 P.2d 603 (Colo.1970); *Davis v. Bonebrake*, 135 Colo. 506, 313 P.2d 982 (Colo.1957). We do not employ the fraudulent concealment analysis here because it does not comport with the facts of this case.

limitations should be tolled under the circumstances of this case.

## IV.

■ The application of the equitable tolling doctrine requires certain factual determinations. The purpose of a court sitting in equity is to promote and achieve justice with some degree of flexibility. *McFadzean v. Lohr*, 152 Colo. 31, 37, 380 P.2d 20, 23–24 (1963). Thus, the exercise of equitable jurisdiction requires an inquiry into the particular circumstances of the case. *Henson v. Hoth*, 258 F.Supp. 33, 35 (D.C.Colo.1966). As the New Jersey Supreme Court observed:

> Unswerving, "mechanistic" application of statutes of limitations would at times inflict obvious and unnecessary harm upon individual plaintiffs without advancing ... legislative purposes. On numerous occasions we have found "such particular circumstances as to dictate not the harsh approach of literally applying the statute of limitations but the application of the more equitable and countervailing considerations of individual justice." A "just accommodation" of individual justice and public policy requires that "in each case the equitable claims of opposing parties must be identified, evaluated and weighed."

*Galligan*, 412 A.2d at 124 (quoting *Kyle v. Green Acres at Verona, Inc.*, 44 N.J. 100, 207 A.2d 513, 518 (1965), and *Lopez v. Swyer*, 62 N.J. 267, 300 A.2d 563, 567 (1973)) (citations omitted).

■ Equity will toll a statute of limitations if a party fails to disclose information that he is legally required to reveal and the other party is prejudiced thereby. *Strader*, 191 Colo. at 211–12, 551 P.2d at 724. In order to determine whether the statute of limitations applicable to Garrett's petition to reopen should be tolled, we believe the factual record requires further development. It is necessary to determine the extent of Garrett's knowledge concerning the medical diagnosis that his condition had worsened to ascertain whether the Fund's failure to furnish the report truly prejudiced him. The Department of Labor regulation serves to assure that the claimant is fully informed of the medical diagnosis of his condition so that the claimant can exercise an informed judgment as to how to proceed. If Garrett lacked information regarding the medical diagnosis that his condition had worsened, equity would remove the bar of the statute of limitations.

■ In further proceedings Garrett must bear the burden of establishing the factual foundation for equitably tolling the statute of limitations. Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled. *Smith v. Kent Oil Co.*, 128 Colo. 80, 83–84, 261 P.2d 149, 151 (1953); *Overheiser*, 814 P.2d at 13. This accords with the rule that the party asserting a claim in equity bears the burden of furnishing satisfactory proof. *O'Connor v. Proprietors Ins. Co.*, 696 P.2d 282, 286 (Colo.1985); *Stan Miller, Inc. v. Breckenridge Resort Assocs., Inc.*, 779 P.2d 1365, 1369 (Colo.App.1989); *Donnelly, Inc. v. Donnelly Bros., Inc.*, 96 R.I. 255, 191 A.2d 143, 147 (1963).

The judgment of the court of appeals is reversed and the case is remanded with directions that it be further remanded so that an ALJ may conduct further proceedings consistent with this opinion.