Maylene MORRIS, Plaintiff-Appellee and Cross-Appellant,

v.

Edward O. GEER, and Robert E. Goodwin, Defendants-Appellants and Cross-Appellees.

No. 83CA0878.

Colorado Court of Appeals, Div. II.

March 6, 1986.

Rehearing Denied April 3, 1986.

Certiorari Denied June 9, 1986.

Williams, Trine, Greenstein & Griffith, P.C., David W. Griffith, Bruce Downsbrough, Boulder, for plaintiff-appellee and cross-appellant.

Cooper & Kelley, P.C., Paul D. Cooper, Elizabeth Starrs, Denver, for defendants-appellants and cross-appellees.

BABCOCK, Judge.

Defendants, Edward O. Geer and Robert E. Goodwin, appeal from the judgment entered on a general jury verdict awarding plaintiff, Maylene Morris, damages for attorney malpractice. Among other things, defendants allege error in the trial court's ruling that the statute of limitations does not bar plaintiff's claims, and in its denial of their motions for directed verdict and for judgment notwithstanding the verdict. Plaintiff cross-appeals, alleging that the judgment was inadequate as a matter of law. We reverse and remand for a new trial.

Plaintiff engaged defendants in 1969 to represent her in a dissolution of marriage proceeding against her then husband, Stanley Morris (husband). The trial court appointed a master to assist in the proceeding because the marital property consisted of some 27 parcels of real property in which husband owned a proportionate interest. Each party had an appraisal performed on the properties which, although differing substantially in individual parcel appraisals, resulted in an overall appraisal for husband in the amount of $1,008,377 and an overall appraisal for plaintiff of an amount between $1,327,000 and $1,488,000. Following negotiations and based on these appraisals, the parties stipulated to a gross value of $1,183,650 for all parcels.

After a hearing before the master, husband's net worth was determined to be $809,000 and the master recommended that plaintiff receive $400,000 in property division which included the family home and cash to be received by means of both lump sum and installment payments. Under the master's recommendations, husband would retain his proportionate interest in the parcels of land. The trial court accepted the master's findings, as modified by a subsequent agreement of the parties regarding tax consequences, and the divorce decree was entered in April 1972.

In May 1973, plaintiff learned of a trust which had been established by husband after the divorce in which husband sold his interest in the parcels of land to a family trust for $2,970,000 on a twenty-year, five percent installment note. Plaintiff further learned of a post-dissolution sale by the Morris family trust of a portion of the land for $650,000. Based on this information, plaintiff recontacted defendants who, in December 1973, filed a motion to reopen the dissolution proceeding on the ground of fraud. However, a hearing on the motion was never set, and the motion was never withdrawn.

In April 1974, plaintiff engaged another attorney to handle her case because she was "dissatisfied with what had prevailed up until that time as far as reopening the motion or executing the motion."

In 1977, defendants informed plaintiff of an I.R.S. investigation being conducted into husband's real estate transactions. They recommended that she wait until the conclusion of the I.R.S. investigation before pursuing the motion to reopen. Plaintiff, however, retained yet another attorney to pursue the motion. Her new attorney elected to pursue the 1973 motion rather than file a new motion to reopen. He filed a motion for discovery which the trial court found was barred by laches. Plaintiff did not appeal that ruling.

In her complaint against defendants filed in November 1979, plaintiff alleged that they: (1) negligently negotiated the 1971 property agreement; and (2) negligently investigated plaintiff's 1973 discovery of husband's alleged fraud and negligently failed to prosecute the 1973 motion to set aside the divorce decree.

I.

Defendants first argue that the trial court erred in ruling that the statute of

limitations did not bar plaintiff's claims. We agree as to the first claim, but disagree as to the second claim.

■ The statute of limitations for an action against an attorney for legal malpractice accrues at the time the client discovers, or through the use of reasonable diligence should have discovered, the negligent act of the attorney. *See* § 13–80–110, C.R.S. (action barred if not commenced within six years); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal. Rptr. 837, 491 P.2d 421 (1971); *cf. Mastro v. Brodie*, 682 P.2d 1162 (Colo.1984). As a matter of law, what is critical in determining when a legal malpractice action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which an action may be brought. *See Burgett v. Flaherty*, 663 P.2d 332 (Mont.1983); *cf. Mastro v. Brodie, supra.* Thus, the focus is on a plaintiff's knowledge of facts which would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney. *Mastro v. Brodie, supra.*

■ The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact which must be resolved by the trier of fact. *See Mastro v. Brodie, supra; City of Aurora v. Bechtel Corp.*, 599 F.2d 382 (10th Cir.1979). However, where the undisputed facts clearly show that a plaintiff discovered, or reasonably should have discovered, the negligent conduct as of a particular date, the issue may be decided as a matter of law. *Cf. Mastro v. Brodie, supra; City of Aurora v. Bechtel Corp., supra.*

■ Here, plaintiff's first claim for relief charged defendants with negligence in rendering legal services to her before her divorce on April 5, 1972. Plaintiff asserted that defendants had failed properly to investigate the value of husband's ownership of the 27 land parcels, and that this inadequate investigation resulted in a stipulated property agreement which was far below plaintiff's fair share of the properties' true value.

Relative to this issue, plaintiff testified that when she first contacted defendants, she informed them that, "in 1966 Morris Heights was worth then three to four or five million dollars." She further testified that, after her appraiser had submitted his appraisal, "I *knew* that Mr. Farber's appraisals were very low, and what he came up with I *know* was not the total worth." (emphasis added) In response to questions regarding her signing of the stipulated property agreement on February 14, 1972, plaintiff testified, "I was still very unhappy, and right after I signed this stipulation I said to Mr. Goodwin, as soon as I sign this, then you will find out what Stanley Morris' net worth really is."

Moreover, from plaintiff's testimony, her complaint, and her appellate brief, it is clear that, in May 1973, she learned from her daughter about the Morris Family Trust and about the sale of a portion of the land. Shortly thereafter, she verified this information through the county clerk and recorder's office. From there she obtained copies of a deed of trust to husband from the family trust in the amount of $2,970,-000, which represented his share of the land sold to the trust, and a deed for the sale of a portion of the land for $650,000.

These undisputed facts establish that, as of May 1973, plaintiff knew, or reasonably should have known, the facts essential to a claim against defendants for negligence in handling her dissolution proceeding. Thus, we conclude that, as a matter of law, the statute of limitations on her first claim began to run as of May 1973. Since her action was not brought until November 1979, we hold that her first claim was barred. *See* § 13–80–110, C.R.S.

■ Plaintiff argues that the "continuous representation rule" should be applied in this case. That rule acts to toll the statute of limitations until the termination of the attorney's representation concerning the particular matter which gave rise to the claim of negligence. *See Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992

(D.C.App.1978). Such a rule has not been adopted in Colorado, and, in any event, would be inapplicable to plaintiff's first claim because it tolls the statute of limitations only during the period when the attorney represented the client on the particular matter which gave rise to the claim of malpractice. Here, defendants' representation in the dissolution proceeding terminated when the judgment was entered in April 1972. This was *before* the time when plaintiff knew, or should have known, of defendants' negligence.

■ Regarding plaintiff's second claim, we hold that, as a matter of law, it was not time-barred. Defendants filed their motion to reopen the dissolution decree in December of 1973. Obviously plaintiff could not have known of any negligence in their investigation or pursuance of that motion until after it was filed. Since plaintiff brought this action in November of 1979, this claim was within the six-year limitation period.

■ Our holding that plaintiff's first claim was time-barred requires us to reverse and remand for a new trial on the second claim. Both claims were submitted to the jury, and the jury returned a general verdict. Thus, it is impossible to determine whether either or both of plaintiff's claims were found by the jury to merit an award. A general verdict upon distinct issues raised by several pleas cannot be sustained if, as here, one of the claims should not have been submitted to the jury. *See Jackson v. Harsco Corp.,* 673 P.2d 363 (Colo. 1983); *O'Brien v. Wallace,* 145 Colo. 291, 359 P.2d 1029 (1961).

## II.

■ Defendants next argue that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict. They assert that there was insufficient evidence to sustain either of plaintiff's claims for relief. Because plaintiff's first claim is time-barred, we need only address plaintiff's second claim. We find no error.

At trial, plaintiff produced expert testimony regarding the standards of practice for an attorney during the time in question and defendants' breach of those standards. These experts testified that once a reasonable attorney received information suggesting a fraud, extensive discovery was required to prove or disprove the fraud. This would have included deposing husband, which defendants did not do. Although defendants produced conflicting expert testimony, we conclude that there was sufficient evidence by which the jury could find that their conduct relative to plaintiff's second claim fell below the standards for attorneys practicing in the Denver area in 1973 and after.

■ Thus, the issue narrows to whether plaintiff met her burden of proving causation and damage. As to her second claim, she was required to prove that because of husband's fraud her motion to reopen the dissolution decree could have been successfully prosecuted, and that she would have received a higher property distribution as a result. *See Lawson v. Sigfrid,* 83 Colo. 116, 262 P. 1018 (1927); *Coon v. Ginsberg,* 32 Colo.App. 206, 509 P.2d 1293 (1973); *Rosebud Mining & Milling Co. v. Hughes,* 21 Colo.App. 247, 121 P. 674 (1912). This burden may be met by either direct or circumstantial evidence. *Holmes v. Gamble,* 624 P.2d 905 (Colo.App.1980), *aff'd,* 655 P.2d 405 (Colo.1982).

■ We conclude that plaintiff met this burden on her second claim. There was evidence presented that a real estate salesman contacted husband in late 1971 or early 1972 and informed him of the salesman's estimate of the value of certain parcels of husband's land. This estimate was considerably higher than the value that either husband's or plaintiff's appraisers had placed on the parcels. There was further testimony that husband told the salesman that he could not formally list the property until after the divorce, but that the salesman could orally quote a price to potential purchasers which was greatly in excess of the appraised value.

From the foregoing, the jury could reasonably infer that husband had fraudulently concealed the true value of the parcels of land from plaintiff, *i.e.*, that: (1) husband concealed a material existing fact that in equity and good conscience should have been disclosed; (2) husband knew that he was concealing such a fact; (3) plaintiff was ignorant of the existence of the fact concealed; and (4) the concealment was practiced with intent that plaintiff would rely on the appraisers' valuations. *See Ingels v. Ingels*, 29 Colo.App. 585, 487 P.2d 812 (1971). Hence, the jury could also infer reasonably that, since a fraud could have been established, a trial court would reopen the dissolution decree and more equitably divide the marital property. *See Chocktoot v. Smith*, 280 Or. 567, 571 P.2d 1255 (1977).

Therefore, we conclude that the evidence was sufficient to sustain plaintiff's second claim, and the trial court did not err in denying defendants' motions for directed verdict and judgment notwithstanding the verdict.

Because of our resolution of this appeal, it is unnecessary to address defendants' remaining contentions. Likewise, it is unnecessary to address plaintiff's cross-appeal.

The judgment is reversed and the cause is remanded for a new trial on plaintiff's second claim for relief.

ENOCH, C.J., and STERNBERG, J., concur.