**Cory A. MORRISON, Petitioner**

v.

**Richard J. GOFF, Respondent.**

**No. 03SC116.**

Supreme Court of Colorado,
En Banc.

June 14, 2004.

Cory A. Morrison, pro se, Denver, Colorado.

Richard J. Goff, pro se, Littleton, Colorado.

Melat, Pressman & Higbie, LLP, Alan Higbie, Colorado Springs, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Montgomery, Little & McGrew, P.C., David C. Little, Christopher B. Little, Englewood, Colorado, White & Steele, John M. Palmeri, Franz Hardy, Denver, Colorado, Attorneys for Amicus Curiae Colorado Bar Association.

Justice MARTINEZ delivered the Opinion of the Court.

In this legal malpractice action, Petitioner Cory A. Morrison appeals the court of appeals' decision affirming summary judgment in favor of Respondent Richard J. Goff. The court of appeals held that the statute of limitations for negligence actions barred Morrison's claims. We must decide whether in a legal malpractice action brought by a criminal defendant, the statute of limitations is tolled while the defendant pursues appellate or postconviction relief in the underlying criminal proceeding.[1] We hold that a criminal defendant's direct appeal or action for postconviction relief does not toll the statute of limitations for the defendant's related legal malpractice action. Instead, a defendant

---

1. Specifically, we granted certiorari to determine:

 Whether the Colorado Court of Appeals erred in ruling that the statute of limitations is not tolled while a criminal defendant either pursues a direct appeal or seeks postconviction relief.

must file the malpractice action within two years of discovering the cause of action and the resulting injury, and may seek a stay pending the resolution of the criminal case.

## I. Facts and Procedural History

In 1996, Goff represented Morrison in a criminal action. After a trial, Morrison was convicted and sentenced. In 1997, Morrison filed a formal complaint with the Office of Supreme Court Disciplinary Counsel[2] alleging several deficiencies in Goff's representation.[3] As a result, Goff was later suspended from the practice of law. *See Goff v. People,* 35 P.3d 487 (Colo.O.P.D.J.2000).

In 1998, the court of appeals affirmed Morrison's conviction. *People v. Morrison,* 985 P.2d 1 (Colo.App.1999) (announced as non-published on Nov. 19, 1998, and later selected for official publication). Morrison then filed a Crim. P. 35(c) motion for postconviction relief, arguing that he suffered ineffective assistance of counsel. In 2001, the trial court in that case granted Morrison's motion, vacated his conviction, and ordered a new trial.

In September 1999, while his Crim. P. 35(c) motion was pending, Morrison filed a civil action for professional negligence against Goff, with allegations similar to those contained in his letter to the discipline office. Upon Goff's motion, the trial court granted summary judgment in Goff's favor, holding that the statute of limitations barred Morrison's action. The trial court concluded that Morrison knew of Goff's negligence when he filed a disciplinary complaint against Goff in May of 1997. Therefore, the trial court reasoned, Morrison filed the action more than two years after he knew of Goff's negligence and the resulting injury and thus after the statute of limitations had elapsed. *See* §§ 13–80–102(1), 13–80–108(1), 5 C.R.S. (2003).

The court of appeals affirmed the trial court's order, holding that the statute of limitations barred Morrison's action. *See Morrison v. Goff,* 74 P.3d 409, 413 (Colo.App. 2003). The court of appeals rejected Morrison's argument that the statute of limitations for his malpractice action was tolled until he obtained postconviction relief. *See id.* at 412–13. Instead, it concluded that a criminal defendant with a pending claim for postconviction relief must file and preserve a related malpractice claim within the statute of limitations period. *See id.* Thus, the court of appeals held that the statute of limitations barred Morrison's claim because he brought it more than two years after he discovered the cause of action. *See id.*

## II. Standard of Review and Principles of Interpretation

 We review grants of summary judgment de novo. *Ryder v. Mitchell,* 54 P.3d 885, 889 (Colo.2002). We construe statutes of limitations like any other statute by attempting to "ascertain and effectuate" the General Assembly's intent. *Hersh Cos. v. Highline Village Assocs.,* 30 P.3d 221, 223 (Colo.2001). Thus, we attempt to interpret statutes of limitations consistent with their purposes of promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims. *Id.*

## III. Analysis

We now examine the effect of an action for appellate or postconviction relief on the statute of limitations for a related malpractice claim brought by a criminal defendant. At the outset, we note the narrowness of the question before us. We are only asked to examine the relationship between wrongful conviction claims and the statute of limitations for malpractice actions. We do not address the question of whether a criminal defendant must first obtain appellate or postconviction relief to prevail in a related malpractice claim, because Morrison has already obtained postconviction relief.[4]

---

**2.** The Office of Supreme Court Disciplinary Counsel is now known as the Office of Attorney Regulation Counsel.

**3.** Specifically, Morrison alleged that Goff failed to investigate his case, call witnesses, and consult with an experienced attorney about his case.

**4.** Several courts have addressed these two questions in one decision. *See Shaw v. State,* 816 P.2d 1358 (Alaska 1991); *Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670 (2001); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900 (1994); *Noske v. Friedberg,* 670 N.W.2d 740 (Minn.2003); *Gibson*

We first provide background to statutes of limitations, as well as the principles of accrual and tolling. We then explain that jurisdictions have reached different conclusions regarding the effect of actions for appellate or postconviction relief on the statute of limitations for related malpractice claims. After outlining the various approaches and the justifications for each, we conclude that the statute of limitations for professional malpractice is not tolled while a defendant seeks appellate or postconviction relief. Instead, a criminal defendant must file a related malpractice action within two years of discovering the cause of action and the resulting injury. In such cases, trial courts have discretion to grant a stay in the malpractice action pending the resolution of the criminal case.

### A. The Statute of Limitations in Colorado for Negligence Actions: Accrual and Tolling

■ In Colorado, the statute of limitations bars negligence actions brought more than two years after the action accrues.[5] § 13–80–102(1). To determine when an action accrues, the General Assembly has adopted a form of the "discovery rule," which states that an action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13–80–108(1); see also Owens v. Brochner, 172 Colo. 525, 530–31, 474 P.2d 603, 606 (1970). When Colorado courts applied this rule to legal malpractice actions, they explained that such actions accrue when plaintiffs learn "facts that would put a reasonable person on notice of the general nature of damage and that the damage was caused by the wrongful conduct of an attorney." Broker House Int'l, Ltd. v. Bendelow, 952 P.2d 860, 863 (Colo.App.1998); see also Morris v. Geer, 720 P.2d 994, 997 (Colo.App. 1986).

■ Tolling is a principle independent from accrual. The tolling of a statute of limitations will either "delay the start of the limitations period" or suspend the running of the limitations period if the accrual date has passed. 51 Am.Jur.2d Limitation of Actions § 169 (2000); see also Thurman v. Tafoya, 895 P.2d 1050, 1054 n. 5 (Colo.1995). Courts apply the doctrine of equitable tolling to suspend a statute of limitations period when "flexibility is required to accomplish the goals of justice." Dean Witter Reynolds, Inc. v. Hartman, 911 P.2d 1094, 1096 (Colo. 1996) (quoting Garrett v. Arrowhead Improvement Ass'n, 826 P.2d 850, 853 (Colo. 1992)). For example, we have tolled the statute of limitations when plaintiffs did not timely file their claims because of "extraordinary circumstances" or because defendants' wrongful conduct prevented them from doing so. Id. at 1096–97.

Thus, through two separate principles, accrual and tolling provide courts with tools to prevent statutes of limitations from expiring and barring claims. Courts have reached opposite conclusions as to whether these principles may prevent the statute of limitations from running for malpractice actions brought by criminal defendants when these defendants await appellate or postconviction relief.

### B. Courts' Differing Interpretations

Courts have differed as to the effect of actions for appellate or postconviction relief on the statute of limitations for a related malpractice action brought by a criminal defendant. Some courts have opted for a bright-line rule under which statutes of limitations for the malpractice actions do not begin to run until a criminal defendant is exonerated through appellate or postconviction relief. Other courts have concluded that criminal defendants' actions for appellate or

v. Trant, 58 S.W.3d 103 (Tenn.2001); cf. Seevers v. Potter, 248 Neb. 621, 537 N.W.2d 505, 508 (1995) ("As a preliminary matter, we note that neither the trial court nor this court was asked to address whether [the criminal defendant] may maintain an action for legal malpractice").

**5.** The statute states, in relevant part:

(1)The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
(a) Tort actions, including but not limited to actions for negligence....
§ 13–80–102(1)(a).

postconviction relief do not affect the statutes of limitations for related malpractice actions. These courts have required criminal defendants to file malpractice actions while actions for appellate or postconviction relief are pending. We outline these approaches and their justifications below, and ultimately adopt the latter approach.

### 1. Bright-line Rule to Determine When Statutes of Limitations Commence

Some jurisdictions have adopted a bright-line rule to resolve when the statute of limitations begins to run for malpractice actions brought by criminal defendants simultaneously seeking appellate or postconviction relief.[6] These jurisdictions have concluded either that malpractice actions do not accrue or that statutes of limitations are tolled until defendants receive appellate or postconviction relief. These courts have cited concerns of judicial efficiency and fairness to criminal defendants to support their position.

Most jurisdictions that tie the running of the statute of limitations for malpractice actions to appellate or postconviction relief have concluded that malpractice actions only begin to accrue, and therefore statutes of limitations begin to run, when a defendant receives such relief. *See Noske v. Friedberg,* 670 N.W.2d 740, 746 (Minn.2003); *Stevens v.*

*Bispham,* 316 Or. 221, 851 P.2d 556, 559–66 (1993); *see also Steele v. Kehoe,* 747 So.2d 931 (Fla.1999); *Trobaugh v. Sondag,* 668 N.W.2d 577 (Iowa 2003). Underlying this rule is the idea that criminal defendants do not fully learn or discover the injury or harm caused by their attorney's negligence until they receive appellate or postconviction relief.[7] *See Stevens,* 851 P.2d at 566 ("Plaintiff had not suffered ... harm at [attorney's] hands in this case unless and until he was exonerated"). Similarly, another court has held that the statute of limitations for malpractice actions is tolled until criminal defendants obtained appellate or postconviction relief.[8] *Shaw v. State,* 816 P.2d 1358, 1360 (Alaska 1991).

The efficiency of the bright-line rule appeals to some courts because it provides "a clear demarcation of the point in time" at which the statute of limitations begins to run. *Trobaugh,* 668 N.W.2d at 584; *see also Noske,* 670 N.W.2d at 744 n. 3 (stating that requiring criminal defendants to seek stays in malpractice actions until criminal matters are settled "would squander scarce judicial resources"). Thus, courts appreciate the utility of a bright-line rule in determining when the statute of limitations begins to run for malpractice claims.

**6.** At least one court has referred to this as the "one track" approach. *See Ereth v. Cascade County,* 318 Mont. 355, 81 P.3d 463, 467 (2003).

**7.** We note that many courts that have adopted the rule that these types of malpractice actions do not accrue until the criminal defendant receives appellate or postconviction relief have also held that plaintiffs cannot even maintain malpractice actions prior to exoneration. *See, e.g., Shaw v. State,* 816 P.2d 1358, 1360 (Alaska 1991); *Noske,* 670 N.W.2d at 744–45; *Stevens,* 851 P.2d at 559–66. Thus, these courts have mainly relied on criminal defendants' inability to maintain malpractice actions to justify their position that statutes of limitations do not accrue until defendants receive appellate or postconviction relief. *See id.* Contrary to these courts' position, we do not view the question of whether a defendant can maintain a malpractice action as resolving the question of whether a malpractice action accrues or the statute of limitations is tolled until a defendant obtains appellate or postconviction relief. We point to decisions in some jurisdictions holding that although defendants must obtain appellate or postconviction relief to maintain an action for malpractice, the statutes of limitations for such actions can accrue before

a defendant obtains relief. *See, e.g., Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal. Rptr.2d 471, 25 P.3d 670 (2001); *Gibson v. Trant,* 58 S.W.3d 103 (Tenn.2001). We agree with these courts' reasoning that trial courts have discretion to stay the malpractice suits to ensure that statutes of limitations will not prematurely bar criminal defendants' claims. *Coscia,* 108 Cal.Rptr.2d 471, 25 P.3d at 679–80; *Gibson,* 58 S.W.3d at 117. Therefore, we do not find the view that statutes of limitations do not accrue because criminal defendants cannot maintain a malpractice action until they obtain appellate or postconviction relief instructive in reaching our decision.

**8.** We note it is unclear why the *Shaw* court concluded that the statute of limitations tolled instead of simply determining that it did not accrue. The court did not discuss why the principle of tolling applied, but only explained that the statute of limitations "does not begin to run" until a criminal defendant obtains appellate or postconviction relief. *See Shaw,* 816 P.2d at 1363.

Additionally, some courts view the bright-line rule as most fair to defendants, citing problems that may arise when criminal defendants are forced to bring civil actions while criminal appeals or motions for post-conviction relief are pending. Some courts hesitate to require defendants to concern themselves with malpractice claims while seeking wrongful conviction relief. *Shaw,* 816 P.2d at 1361. Others attempt to avoid forcing criminal defendants to argue inconsistent positions in the civil and criminal actions. *See Hughes v. Mahaney & Higgins,* 821 S.W.2d 154, 156 (Tex.1991). Similarly, some courts warn that in malpractice claims, defense attorneys may reveal privileged information that could aid the prosecution in the criminal matter. *See, e.g., Shaw,* 816 P.2d at 1361. Thus, these courts have decided to prolong the running of statutes of limitations for malpractice claims in the interest of fairness to the criminal defendants.

Courts following the bright-line approach therefore have opted for a rule that serves the interests of judicial economy and fairness to criminal defendants. Other courts, however, have failed to find these reasons persuasive.

### 2. The Two-track Approach

Some jurisdictions have rejected the bright-line rule in favor of a "two-track" approach that follows conventional accrual and tolling rules. *See, e.g., Silvers v. Brodeur,* 682 N.E.2d 811 (Ind.Ct.App.1997); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900 (1994); *Seevers v. Potter,* 248 Neb. 621, 537 N.W.2d 505 (1995); *Gibson v. Trant,* 58 S.W.3d 103 (Tenn.2001). These courts reason that this approach promotes the policies that underlie statutes of limitations, is consistent with the intent of legislatures, and protects the interests of criminal defendants.

. Under the two-track approach, a criminal defendant must file a malpractice claim within the period defined in the statute of limitations. *See Gebhardt,* 510 N.W.2d at 907. In jurisdictions following the discovery rule, the criminal defendant must file a malpractice claim within the specified period after the defendant learns or should have learned of the injury and its cause. *See* § 13–80–108(1);

*Gebhardt,* 510 N.W.2d at 907. The criminal defendant then may seek a stay in the civil suit until the criminal matter is resolved. *Gebhardt,* 510 N.W.2d at 907. As in most situations in which related criminal and civil matters are simultaneously pending, courts have discretion as to whether the civil suit should proceed or whether it should "yield to the criminal matter." *Id.* This approach therefore allows both the civil and criminal matters to "proceed along separate tracks." *Id.*

Courts adopting the two-track approach reason that it promotes the objectives of statutes of limitations. They explain that statutes of limitations aim to "promote stability in the affairs of persons and to avoid the unfairness and burdens inherent in defending stale claims." *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556, 571 (1993) (Unis, J., specially concurring). These courts reason that by tying the statute of limitations period to the time at which the criminal defendant knew of the negligence rather than at exoneration, the two-track approach prevents criminal defendants from bringing malpractice actions decades after the negligence occurred. *Silvers,* 682 N.E.2d at 817; *see also Stevens,* 851 P.2d at 571–72 (Unis, J., specially concurring); *Gibson,* 58 S.W.3d at 117. In their view, this approach protects attorneys by guaranteeing that they receive "formal, seasonable notice" of malpractice claims. *Silvers,* 682 N.E.2d at 817; *see also Gibson,* 58 S.W.3d at 117. Additionally, these courts explain that the two-track approach ensures that malpractice claims are brought before they become stale. *Stevens,* 851 P.2d at 571–72; *see also Coscia v. McKenna & Cuneo,* 25 Cal.4th 1194, 108 Cal.Rptr.2d 471, 25 P.3d 670, 680 (2001). Thus, courts adopting the two-track approach perceive it as furthering the purposes of statutes of limitations.

Additionally, courts that have endorsed the two-track approach reason that it is consistent with the intent of the legislatures. According to these courts, legislatures have "chosen to define the statute of limitations for a professional negligence claim as two years" after the plaintiff learns of the injury and its cause. *See Stevens,* 851 P.2d at 573 (Unis, J., specially concurring); *see also*

*Duncan v. Campbell,* 123 N.M. 181, 936 P.2d 863, 866 (N.M.Ct.App.1997). Because legislatures did not distinguish between malpractice claims arising out of civil and criminal cases when defining the statutes of limitations, courts adopting the two-track approach have concluded that legislatures intended for the same rule to apply to each. *See Stevens,* 851 P.2d at 573 (Unis, J., specially concurring); *see also Seevers,* 537 N.W.2d at 511. These courts therefore reason that the two-track approach is consistent with legislative intent because it mandates that statutes of limitations begin to run once a criminal defendant learns of the injury and resulting damage.

Finally, courts that endorse the two-track approach differ with those that adopt the bright-line approach, contending that the two-track approach also serves the interests of both defendants and judicial economy. They believe that the approach safeguards the rights of criminal defendants because trial courts have discretion to stay the civil suit until the criminal matter is resolved. *See, e.g., Gebhardt,* 510 N.W.2d at 907. Similarly, these courts maintain that the two-track approach does not waste judicial resources because trial courts may choose to continue the civil proceedings if such course does not jeopardize the criminal defendants' rights. *See id.* Therefore, these courts reason that the two-track approach sufficiently protects both the interests of defendants and those of judicial economy.

### C. Bright-line v. Two-track Approach in Colorado

Having reviewed the bright-line and two-track approaches outlined by various jurisdictions, we now adopt the two-track approach. We find the two-track more desirable than the bright-line rule because the two-track approach furthers the purposes of statutes of limitations. Additionally, it comports with established principles of accrual and tolling because it allows courts to make case-by-case determinations. Finally, we conclude that the two-track approach is more consistent with Colorado law regarding accrual and tolling than the bright-line rule.

We favor the two-track approach because it furthers the statutes of limitations' goals of promoting justice, preventing unnecessary delay, and avoiding the litigation of stale claims. *See Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096 (Colo.1996). By requiring criminal defendants to bring malpractice claims once they learn of the malpractice and the resulting injury, the two-track approach restricts the period during which criminal defendants may bring such suits. Thus, this approach protects attorneys from being forced to defend stale malpractice claims. Moreover, the two-track approach furthers judicial economy by expediting the litigation of such claims. *See Silvers v. Brodeur,* 682 N.E.2d 811, 817 (Ind.Ct. App.1997); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900, 907 (1994); *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556, 571–72 (1993) (Unis, J., specially concurring).

In contrast, the bright-line rule fails to further the goals of preventing delay and avoiding litigation of stale claims because it does not require plaintiffs to bring claims as expediently as possible. Rather, it prevents criminal defendants from bringing these claims when defendants learn of them and instead requires defendants to wait until exoneration, which may occur years after a defendant's conviction. For this reason, the bright-line rule "leaves criminal defense lawyers open to the interminable possibility of being sued by any convicted client who has not been exonerated but who, theoretically, could be exonerated at any future time." *Stevens,* 851 P.2d at 572 (Unis, J., specially concurring). Additionally, this approach allows the litigation of negligence claims long after the claims have grown stale, when evidence has been lost, and witnesses cannot be located. Thus, the two-track approach better furthers the statute of limitations' policies of protecting potential defendants and preventing stale claims.

In addition to furthering the goals of statutes of limitations, the two-track approach comports with principles of accrual and tolling by allowing courts to evaluate on a case-by-case basis when claims accrue and when statutes of limitations require tolling. Both the determinations of when claims accrue and when the statute of limitations should be tolled require examinations of the

underlying facts. *See* § 13–80–108(1); *Dean Witter*, 911 P.2d at 1096. The determination of when claims accrue focuses on each plaintiff's specific knowledge of relevant facts, as courts must ask precisely when each injured party knew or should have known of the relevant injury and its cause. § 13–80–108(1); *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860, 863 (Colo.App.1998) (determination of when·claims accrue "is normally a question fact"). Similarly, because tolling is an equitable remedy, its· application involves an examination of the facts and circumstances of individual cases to determine when equity requires such a remedy. *Garrett v. Arrowhead Improvement Assn.*, 826 P.2d 850, 854 (Colo.1992); *see also Dean Witter*, 911 P.2d at 1096–97. The two-track approach is consistent with these principles because it allows courts to make specific determinations of whether claims have accrued and whether the equities of a case require the tolling of the statute of limitations.

In contrast, the bright-line approach is inconsistent with principles of accrual and tolling because it does not allow courts to determine on a case-by-case basis whether actions accrue or statutes of limitations are tolled. Rather, the bright-line approach determines as a matter of law when an entire class of claims—malpractice actions brought by criminal defendants who have pending actions for appellate or postconviction relief—accrues or when their statutes of limitations toll. Thus, the two-track approach is advantageous because it comports with these principles by allowing courts to evaluate the facts of each case to determine whether a claim accrues or tolling is appropriate.

Finally, we adopt the two-track approach because it best comports with Colorado statutes and precedent regarding both accrual and tolling. Simply put, the two-track approach is consistent with the definition of accrual for malpractice claims set forth by the Colorado statutes because it allows malpractice actions to proceed pursuant to these statutory provisions. For this same reason, the two-track approach is also consistent with Colorado precedent, which adheres to the statutorily imposed accrual rule. Despite opportunities to fashion a judicial exception

to·this rule, Colorado courts have consistently rejected attempts to deviate from the statutory definition ·.of accrual for malpractice claims. *See Broker House*, 952 P.2d at 863–64; *Jacobson· v. Shine*, 859 P.2d 911, 913 (Colo.App.1993); *Morris v. Geer*, 720 P.2d 994, 997–98·(Colo.App.1986) (all holding that a pending civil appeal does not affect the accrual of a related malpractice claim); *see also Miller v. Byrne*, 916 P.2d 566, 582 (Colo. App.1995) (holding that legal malpractice actions may accrue before an attorney's representation ceases). Therefore, the two-track approach comports with Colorado statutes and precedent governing accrual.

Similarly, the two-track approach is consistent with Colorado precedent regarding equitable tolling. · Because 'tolling involves the exercise of equitable jurisdiction, Colorado courts have repeatedly stated that tolling determinations require an examination of the specific facts and circumstances of each case. *Garrett*, 826 P.2d át 855; *see also Dean Witter*, 911 P.2d at 1096. The two-track approach allows· courts· to determine· on a case-by-case basis 'whether fairness requires the tolling of the· statute of limitations. Therefore, we conclude the· two-track approach is consistent with Colorado law regarding tolling, as well as accrual.

In contrast, the bright-line approach is inconsistent with Colorado law regarding both accrual and tolling. The bright-line approach conflicts with the terms of the accrual statute, as well as precedent interpreting it, because it creates an exception to the accrual definition for malpractice actions arising from criminal actions. The General Assembly's definition of accrual does not provide any specific or· unique rule with respect to malpractice actions, and does not distinguish between legal malpractice claims brought by criminal defendants and other types of negligence actions. *See* § 13–80–108(1)(13). Similarly, Colorado courts have rejected attempts to create an exception to the discovery rule for malpractice actions. *See Broker House*, 952 P.2d at 863–64; *Miller*, 916 P.2d at 582; *Jacobson*, 859 P.2d at 913 (Colo.App.1993); *Morris*,. 720 P.2d at 997–98. Thus, the bright-line rule is incompatible with Colorado statutes and precedent.

The bright-line approach also conflicts with Colorado precedent regarding tolling because it tolls the statute of limitations for an entire class of claims. Colorado courts have generally hesitated to modify accrual and tolling rules for broad classes of claims. They have articulated only a few classes of cases to which tolling applies. *See Dean Witter*, 911 P.2d at 1096–97 (stating that this court has applied the doctrine of equitable tolling when defendant's wrongful conduct prevented the plaintiff from timely asserting claim, and that other jurisdictions have allowed tolling where "extraordinary circumstances" prevented timely filing). Moreover, Colorado courts have declined to create classes of claims for which the statute of limitations is tolled. *See, e.g., Noel v. Hoover*, 12 P.3d 328 (Colo. App.2000) (refusing to toll statute of limitations for a malpractice action related to tax proceedings). Therefore, because the bright-line approach tolls the statute of limitations for all malpractice claims arising from criminal cases, the rule appears inconsistent with Colorado law governing tolling. Thus, we adopt the two-track approach because it is most consistent with Colorado statutes and precedent regarding both accrual and tolling.

For these reasons, we hold that an underlying criminal appeal or motion for postconviction relief does not affect the accrual for related legal malpractice claims. Similarly, such criminal matters do not require tolling of the statute of limitations of related malpractice claims. Criminal defendants must file their malpractice actions within two years of discovering the attorney's negligence and the resulting injury. In the event that a particular criminal defendant must obtain appellate relief to avoid dismissal of a pending malpractice action, or if proceeding with a malpractice action would jeopardize the criminal defendant's rights, the trial court may stay the malpractice action pending resolution of the criminal case.

## IV. Determination of Whether the Statute of Limitations Barred Morrison's Malpractice Claim

In Morrison's case, we conclude that the court of appeals and the trial court properly determined that the statute of limita-tions barred Morrison's malpractice claim. As we explained, the statute of limitations bars negligence actions brought more than two years after the claim accrues. § 13–80–102(1). Claims accrue when a plaintiff knows or should know through reasonable diligence of both the injury and its cause. § 13–80–108(1).

Here, Morrison's action accrued more than two years before he brought the malpractice action. Morrison appears to have known of Goff's negligence in May, 1997, when he filed a formal complaint with the Office of Supreme Court Disciplinary Counsel alleging negligence by Goff. Because Morrison brought his malpractice action in September, 1999, it is outside the statute of limitations.

Moreover, Morrison has not presented any facts under which principles of equity might toll the statute of limitations. Therefore, because Morrison's claim was filed more than two years after his claim accrued, and because the statute of limitations in his case is not tolled, we hold that the statute of limitations bars his claim.

Accordingly, we affirm the judgment of the court of appeals affirming the district court's grant of summary judgment in favor of Goff.

Justice BENDER does not participate.